# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

**VIRAL BHAGAT,**

                                    Plaintiff,

— against —

**ANUJA SHARAD SHAH a/k/a ANU SHAH,**

                                    Defendant.

---

INDEX NO.:

**SUMMONS**

To the above-named Defendant(s):

**YOU ARE HEREBY SUMMONED** to appear in Supreme Court, County of New York, 60 Centre Street, New York, NY 10007, to file an Answer to the Complaint in this action, or if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorney, within twenty (20) days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       February 22, 2024

Respectfully Submitted,

**CRISCIONE RAVALA, LLP**

By: */s/ Salman Ravala*
M. Salman Ravala, Esq.
250 Park Avenue, 7th Floor
New York, NY 10177
T: (212) 920-7142
F: (800) 583-1787
E: SRavala@lawcrr.com
*Attorneys for Plaintiff*

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

**VIRAL BHAGAT,**

　　　　　　　　　　　Plaintiff,

— against —

**ANUJA SHARAD SHAH a/k/a ANU SHAH,**

　　　　　　　　　　　Defendant.

---

INDEX NO.:

**VERIFIED COMPLAINT**

---

Plaintiff, VIRAL BHAGAT ("Plaintiff" or "BHAGAT"), by his attorneys, Criscione Ravala, LLP, as and for his Verified Complaint against Defendant, ANUJA SHARAD SHAH a/k/a ANU SHAH, ("Defendant" or "SHAH"), alleges as follows:

## NATURE OF THE ACTION

1.　　Plaintiff brings this action against Defendant SHAH for fraud, negligent misrepresentation, tortious interference with contract, tortious interference with employment relationship, intentional infliction of emotional distress, negligent infliction of emotional distress, and prima facie tort, arising from Defendant SHAH's acts and omissions in duping Plaintiff BHAGAT, into granting Defendant SHAH unauthorized access to a third-party Instagram Account in the course of Plaintiff BHAGAT's employment. Defendant SHAH's acts and omissions were made with the intent and purpose of getting Plaintiff BHAGAT terminated from his employment. Defendant SHAH succeeded in her scheme, inflicting significant damages upon Plaintiff BHAGAT.

## PARTIES

2.　　Plaintiff BHAGAT is an adult individual residing in the state of California.

2

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3.     Upon information and belief, Defendant SHAH is a resident of the State of New York, residing at 235 W 48th, Apartment 17R, New York NY 10036.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to CPLR § 301, by reason that Defendant SHAH maintains her principal residence in the County and State of New York.

5.     Venue is appropriate pursuant to CPLR 503(a), in that Defendant SHAH resides in the County of New York.

6.     This is an action for damages in excess of Fifty Thousand Dollars ($50,000.00).

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

7.     In 2017, Plaintiff BHAGAT and Defendant SHAH met on Shaadi.com, an online dating website, which advertises itself as being "for Indian singles looking for dating for long-term relationships".

8.     Plaintiff BHAGAT and Defendant SHAH never met in person and eventually lost contact with each other.

9.     During 2021, Plaintiff BHAGAT and Defendant SHAH reconnected on LinkedIn.com, a professional networking platform.

10.     According to her LinkedIn profile, in 2021 Defendant SHAH became employed by Meta Platforms, Inc. ("META"), formerly known as Facebook, Inc..

11.     Upon information and belief, Defendant SHAH was employed in a remote position, while residing in the State of New York.

12.     Upon information and belief, Defendant SHAH was employed by META until January, 2023.

13.     On Defendant SHAH's LinkedIn profile, SHAH also asserted that she was an

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

international success with successful hi-tech start-up companies, was an Advisor to the United Nations, and had donated millions of dollars to the United Nations High Commissioner for Refugees.

14.    META is a multinational technology conglomerate, which owns and operates Facebook, Instagram, Threads, WhatsApp, and other products and services. It is the seventh largest company in the world.

15.    META ranks among the largest American information technology companies, alongside other "Big Five" corporations (i.e., Amazon (AMZN), Apple (AAPL), Microsoft (MSFT); and Alphabet (GOOG)), all of which companies are well known for the extreme vetting of their employees.

16.    In or about August 2022, Plaintiff BHAGAT also became employed by META, through their Menlo Park, California office.

17.    At the time of his hiring at META, Plaintiff BHAGAT was already a seasoned software and web development engineer with over thirteen (13) years of work experience, including work at other Big Five corporations.

18.    In or about March 2023, after Defendant SHAH had been terminated/laid off, she reached out to Plaintiff BHAGAT via LinkedIn Messenger and made the following representations:

a.    That Defendant SHAH was a friend of Rushad Dordi ("Dordi") and that she was authorized to speak on his behalf;

b.    That unknown person(s) had gained unauthorized access to Dordi's Instagram account under the name rushad.dordi (the "IG Account"), i.e., the IG Account had been hacked; and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:24-cv-01424-VEC-RFT   Document 1-1   Filed 02/25/24   Page 6 of 24

c. That Dordi, through Defendant SHAH, had requested that Plaintiff BHAGAT use his access as a Meta employee to assist Dordi in regaining control of his IG Account.

19. The representations made by Defendant SHAH were false, and known to be false by Defendant SHAH, in that:

a. Dordi and Defendant SHAH were no longer friends, but rather, upon information and belief, while they had previously connected through a dating app, their friendship never resulted in a romantic relationship, which left Defendant SHAH disgruntled;

b. Defendant SHAH was not authorized to speak on Dordi's behalf;

c. Dordi had not asked Defendant SHAH to regain control of his IG account; and

d. unknown persons had not in fact gained unauthorized access to Dordi's IG Account.

20. Apparently, unbeknownst to Plaintiff BHAGAT, prior to Defendant SHAH's termination from META in January, 2023, Defendant SHAH had previously hacked Dordi's IG Account on multiple occasions by changing the e-mail addresses and passwords associated with the account and posting false, defamatory, and salacious content.[1]

21. At the time of the misrepresentations, Plaintiff BHAGAT was informed by Defendant SHAH that the procedure for a META employee to assist someone in regaining access to his/her compromised account was to submit an "Oops Feedback Form" and then forward said Oops Feedback Form to META's Centralized Escalation Support (CES) Team.

22. Unbeknownst to Plaintiff BHAGAT, but apparently well-known to Defendant

---

[1] See, *Rushad Dordi v. Anu Shah*, Index No. 161221/2023.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SHAH, META maintained a policy that Oops Feedback Forms may only be submitted by META employees to recover a password for a friend's "hacked" social media account if the employee personally knows the purported account holder. A violation of this policy results in termination.

23.     The recovery of the IG Account required the use of an email address, which e-mail address (i.e., rusahdkdordi2023@gmail.com) was provided to Plaintiff BHAGAT by Defendant SHAH and falsely represented by Defendant SHAH to Plaintiff BHAGAT as belonging to Dordi.

24.     Upon information and belief, the email address that was provided by Defendant SHAH to Plaintiff BHAGAT (i.e., rusahdkdordi2023@gmail.com) was created and/or controlled by Defendant SHAH without Dordi's consent or knowledge.

25.     Upon information and belief, an e-mail associated with the IG Account was rushad.dordi@gmail.com.

26.     Based upon the representations made by Defendant SHAH to Plaintiff BHAGAT, Plaintiff BHAGAT prepared an "Oops Feedback Form" and submitted that request to META's Centralized Escalation Support (CES) Team.

27.      META then sent a password reset link to the fraudulent email address, which Defendant SHAH apparently controlled, thus permitting Defendant SHAH to gain access to the IG Account.

28.     Once Defendant SHAH had gained control of Dordi's IG Account, Defendant SHAH immediately changed the account status from private to public, and uploaded and posted fake sexual content to Dordi's IG Account, and further sent sexually explicit photos and harassing content from the IG Account through the Instagram Direct Messenger function, all intending to cause Dordi embarrassment and shame and, upon information and belief, did in fact cause Dordi embarrassment and shame.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

29.     Then, in an interesting turn of events, and in an apparent effort to take down Plaintiff BHAGAT as another of her failed dating connections and/or envy because Defendant SHAH was terminated/laid off from her employment with META while Plaintiff BHAGAT was not, Defendant SHAH, just one hour after hacking into the IG Account and posting/messaging the defamatory content, disingenuously sent Dordi text messages and voice notes informing him that his IG Account must have been "hacked" and offered to help Dordi. Defendant SHAH instructed Dordi to report the incident to META.

30.     In communicating with Dordi, Defendant SHAH knew that it was SHAH that "hacked" the IG Account, and that a report to META would prepare the grounds for Plaintiff BHAGAT's termination because Plaintiff BHAGAT did not personally know Dordi.

31.     Upon information and belief, on or about June 14, 2023, Dordi filed a complaint with META regarding the loss of his IG Account, access to which he finally regained after filing the complaint with META.

32.     As a result of the foregoing acts, and misconduct by Defendant SHAH, META commenced an investigation into the unauthorized takeover of Dordi's IG Account.

33.     After META concluded its investigation, META terminated Plaintiff BHAGAT's employment.

34.     Plaintiff BHAGAT's termination was due to the policy that Oops Feedback Forms may only be submitted by META employees to recover a password for a friend's "hacked" social media account if the employee personally knows the purported account holder.

35.     Plaintiff BHAGAT's termination arose out of Defendant SHAH's actions.

36.     At the time Defendant SHAH made her representations to Plaintiff BHAGAT,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Defendant SHAH knew of the falsity of her statements, and made those statements with the intent to have Plaintiff BHAGAT believe those statements were in fact true.

37.     Defendant SHAH made her representations to Plaintiff BHAGAT and Dordi, with the intent to have Plaintiff BHAGAT terminated from META.

38.     Plaintiff BHAGAT reasonably believed Defendant SHAH's statements and representations had been made to him by Defendant SHAH because of their long-term acquaintance and by reason of her prior employment with META and her familiarity with their policies and procedures.

39.     As a direct and proximate result of Defendant SHAH'S fraudulent acts, Plaintiff BHAGAT lost future income, employee equity compensation (i.e., unvested stock units), and his reputation and earning potential, all resulting in significant compensatory damages.

40.     Further, the loss of his reputation meant that not only could Plaintiff BHAGAT not continue to work for META, but that future employment prospects would be impacted. This realization led to Plaintiff BHAGAT'S severe emotional suffering, anguish, and/or psychological harm.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Fraud)

41.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "40" as if fully set forth herein.

42.     Defendant SHAH knew that the representations made by her to Plaintiff BHAGAT, and her omissions of fact, were false and were used to defraud Plaintiff BHAGAT into aiding Plaintiff BHAGAT in her unlawful acts in hacking into Dordi's account.

43.     Defendant SHAH knew that the representations made to Plaintiff BHAGAT, and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

her omissions of fact, were an effort to further Defendant SHAH's scheme to defame Dordi, of which Defendant SHAH did not inform Plaintiff BHAGAT.

44.     Plaintiff BHAGAT had no knowledge of Defendant SHAH's previous hack attempts on Dordi's IG Account.

45.     Plaintiff BHAGAT had no knowledge that Defendant SHAH's request that Plaintiff BHAGAT assist Dordi in regaining control of his account was an effort to hack Dordi's IG Account.

46.     At the time Defendant SHAH made the aforementioned representations and omissions of fact to Plaintiff BHAGAT, Defendant SHAH knew of the falsity of her statements and omissions, and made those statements and omissions with the intent to have Plaintiff BHAGAT believe that those statements and omissions were in fact true, and with the ultimate intent that Plaintiff BHAGAT be terminated by META.

47.     The aforementioned misrepresentations and omissions made by Defendant SHAH to Plaintiff BHAGAT were material.

48.     Defendant SHAH made the aforementioned misrepresentations and omissions to Plaintiff BHAGAT with the intent that Plaintiff BHAGAT would rely upon them in submitting the Oops Feedback From so that Defendant SHAH could gain unlawful access to Dordi's IG Account.

49.     Defendant SHAH made the aforementioned misrepresentations and omissions to Plaintiff BHAGAT with the intent to deceive, manipulate, and defraud Plaintiff BHAGAT, and to ultimately secure his termination of employment with META.

50.     Plaintiff BHAGAT reasonably and justifiably relied upon the aforementioned false representations and omissions due to the parties' long-term acquaintance, and Defendant SHAH's previous employment at META.

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

51.     As a direct and proximate result of Defendant SHAH's misrepresentations and omissions of fact, and Plaintiff BHAGAT's reasonable reliance thereon, Plaintiff BHAGAT submitted the Oops Feedback form to META's Centralized Escalation Support (CES) Team enabling Defendant SHAH to gain unauthorized access to Dordi's IG account where Defendant SHAH then posted defamatory, sexual, and salacious content without Dordi's knowledge or consent.

52.     At the time Plaintiff BHAGAT submitted the Oops Feedback Form to META, at Defendant SHAH's request and direction, Plaintiff BHAGAT had no knowledge of Defendant SHAH's previous or current hack attempts on Dordi's IG Account.

53.     At the time Plaintiff BHAGAT submitted the Oops Feedback Form to META, at Defendant SHAH's request and direction, Plaintiff BHAGAT had no knowledge of Defendant SHAH's attempt to get Plaintiff BHAGAT terminated from META.

54.     At the time Plaintiff BHAGAT submitted the Oops Feedback Form to META, at Defendant SHAH's request and direction, Plaintiff BHAGAT had no knowledge that Defendant SHAH's representations were false.

55.     Had Plaintiff BHAGAT known the representations so made to be false, or had Plaintiff BHAGAT known of Defendant SHAH's omissions of fact relative to her previous scheme to defame Dordi, current scheme to defame Dordi, or her efforts to have Plaintiff BHAGAT terminated, Plaintiff BHAGAT would not have submitted the Oops Feedback Form to META.

56.     But for Defendant SHAH's wrongful actions, Plaintiff BHAGAT would not have submitted the Oops Feedback Form, which resulted in his ultimate termination from META.

57.     But for Defendant SHAH's wrongful actions, Plaintiff BHAGAT would not have been terminated from his employment with META.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

58.    As a direct and proximate result of Defendant SHAH's misrepresentations, and the actions taken by Plaintiff BHAGAT in reasonable reliance thereof, Plaintiff BHAGAT's employment with META was terminated.

59.    As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has lost future salary income, as well as his META employee equity compensation (i.e., unvested stock units), and ancillary benefits.

60.    As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has suffered significant damage to his reputation and earning protentional resulting in a further loss of damages, including future income.

61.    Defendant SHAH's conduct demonstrates a high degree of moral culpability or willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

62.    As a direct and proximate result of the acts and omissions alleged herein, Plaintiff has suffered damages in an amount to be proven at trial, but expected to be not less than three million, five hundred thousand ($3,500,000.00) in compensatory damages, plus interest, costs, expenses and attorney's fees, in addition to an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

63.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "62" as if fully set forth herein.

64.    Over the course of their friendship, Defendant SHAH held herself out to Plaintiff

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

BHAGAT as having a special or unique understanding and expertise regarding META's policies and procedures relative to the recovery of hacked social media accounts.

65.     Due to the ongoing friendship, and co-employee relationship, between Defendant SHAH and Plaintiff BHAGAT, Defendant SHAH was in a special or privity-like position of confidence and trust with Plaintiff BHAGAT, which imposed a special duty upon Defendant SHAH to speak with care.

66.     With regard to the policies and procedures regarding the recovery of social media accounts via Oops Feedback Forms, Defendant SHAH had a duty to impart correct and complete information to Plaintiff BHAGAT, in that Defendant SHAH was required to disclose to Plaintiff BHAGAT: the truth regarding her attempt to hack Dordi's IG Account; META's requirements relative to the Oops Feedback Form she requested BHAGAT complete; and the risks to Plaintiff BHAGAT if META's policies and procedures were not followed (i.e., his termination from the company).

67.     Unbeknownst to Plaintiff BHAGAT, the information provided by Defendant SHAH to Plaintiff BHAGAT was incorrect and incomplete.

68.     At the time Defendant SHAH made her representations to Plaintiff BHAGAT, Defendant SHAH had no reasonable basis for believing the veracity of her statements and made those statements with the intent to have Plaintiff BHAGAT believe those statements were in fact true.

69.     By reason of their friendship and co-employee relationship, Plaintiff BHAGAT reasonably and justifiably relied upon Defendant SHAH's statements when submitting the Oops Feedback Form that led to his termination.

70.     Defendant SHAH knew that despite the lack of any ill intent on the part of

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Plaintiff BHAGAT, META has a strict policy that any META Employee submitting an Oops Feedback Form without personally knowing the owner of the account would result in the META employee being terminated.

71.     As a direct and proximate result of Defendant SHAH's misrepresentations, Plaintiff BHAGAT submitted an Oops Feedback form to META's Centralized Escalation Support (CES) Team permitting Defendant SHAH to gain unauthorized access to Dordi's IG account where Defendant SHAH then posted sexual and harassing content, without Dordi's knowledge or consent, for the purpose of embarrassing Dordi. Then Defendant SHAH informed Dordi to contact META and file a complaint, which ultimately led to Plaintiff BHAGAT's termination.

72.     As a result of the foregoing negligent misrepresentations, Plaintiff has sustained damages in an amount to be determined at trial, plus interest, costs, expenses and attorney's fees.

### THIRD CAUSE OF ACTION
### (Tortious Interference With Contract)

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "72" as if fully set forth herein.

74.     Beginning in August, 2022, Plaintiff BHAGAT was actively employed with META.

75.     At the time Defendant SHAH contacted Plaintiff BHAGAT in March, 2023, in an attempt to wrest control of the IG Account of Dordi, Defendant SHAH knew Plaintiff BHAGAT was so employed with META. Indeed, this employment was the primary reason she sought Plaintiff BHAGAT out.

76.     Defendant SHAH had knowledge of META's strict policy that any META Employee submitting an Oops Feedback Form without personally knowing the owner of the account would result in the META employee being terminated.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:24-cv-01424-VEC-RFT    Document 1-1    Filed 02/25/24    Page 15 of 24

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/23/2024

77. Knowing that Plaintiff BHAGAT was currently in the employ of META, Defendant SHAH reached out to him, and made the representations herein alleged, with not only the intent to continue her scheme of harassing and defaming Dordi (due to their failed relationship), but also with the intent of securing Plaintiff BHAGAT's termination from META (due to their failed dating connection and/or envy because Defendant SHAH was terminated/laid off from her employment with META while Plaintiff BHAGAT was not).

78. In furtherance of her efforts to get Plaintiff BHAGAT terminated, after she duped Plaintiff BHAGAT in granting her unauthorized access to Dordi's IG Account, just one hour after hacking into the IG Account and posting/messaging the defamatory content, Defendant SHAH disingenuously sent Dordi messages informing him that his IG Account must have been "hacked" and offered to help Dordi. Defendant SHAH instructed Dordi to report the incident to META, knowing that it would result in Plaintiff BHAGAT's termination.

79. As a direct and proximate result of Defendant SHAH's fraud and misrepresentations, and the actions taken by Plaintiff BHAGAT in reasonable reliance thereof, Plaintiff BHAGAT's employment with META was terminated.

80. As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has lost future salary income, as well as his META employee equity compensation (i.e., unvested stock units), and ancillary benefits.

81. As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has suffered significant damage to his reputation and earning potential resulting in a further loss of damages, including future income.

82. Defendant SHAH's conduct demonstrates a high degree of moral culpability or

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

83.     As a direct and proximate result of the acts and omissions alleged herein, Plaintiff has suffered damages in an amount to be proven at trial, but expected to be not less than three million, five hundred thousand ($3,500,000.00) in compensatory damages, plus interest, costs, expenses and attorney's fees, in addition to an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct.

### FOURTH CAUSE OF ACTION
**(Tortious Interference With Employment Relationship)**

84.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "83" as if fully set forth herein.

85.     Beginning in August, 2022, Plaintiff BHAGAT was actively employed with META.

86.     At the time Defendant SHAH contacted Plaintiff BHAGAT in March, 2023, in an attempt to wrest control of the IG Account of Dordi, Defendant SHAH knew Plaintiff BHAGAT was so employed with META. Indeed, this employment was the primary reason she sought Plaintiff BHAGAT out.

87.     Defendant SHAH had knowledge of META's strict policy that any META Employee submitting an Oops Feedback Form without personally knowing the owner of the account would result in the META employee being terminated.

88.     Knowing that Plaintiff BHAGAT was currently in the employ of META, Defendant SHAH reached out to him, and made the representations herein alleged, with not only the intent to continue her scheme of harassing and defaming Dordi (due to their failed relationship), but also

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

with the intent of securing Plaintiff BHAGAT's termination from META (due to their failed dating connection and/or envy because Defendant SHAH was terminated/laid off from her employment with META while Plaintiff BHAGAT was not).

89.     In furtherance of her efforts to get Plaintiff BHAGAT terminated, after she duped Plaintiff BHAGAT in granting her unauthorized access to Dordi's IG Account, just one hour after hacking into the IG Account and posting/messaging the defamatory content, Defendant SHAH disingenuously sent Dordi messages informing him that his IG Account must have been "hacked" and offered to help Dordi. Defendant SHAH instructed Dordi to report the incident to META, knowing that it would result in Plaintiff BHAGAT's termination.

90.     Defendant SHAH acted with the sole purpose of harming Plaintiff BHAGAT.

91.     As a direct and proximate result of Defendant SHAH's acts of dishonesty, unfairness, impropriety, and/or illegal means which amounted to fraud or other independent torts fraud and misrepresentations, and the actions taken by Plaintiff BHAGAT in reasonable reliance thereof, Plaintiff BHAGAT's employment with META was terminated.

92.     As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has lost future salary income, as well as his META employee equity compensation, and ancillary benefits.

93.     As a direct and proximate result of Plaintiff BHAGAT's termination from his employment with META, Plaintiff BHAGAT has suffered significant damage to his reputation and earning potential resulting in a further loss of damages, including future income.

94.     Defendant SHAH's conduct demonstrates a high degree of moral culpability or willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:24-cv-01424-VEC-RFT   Document 1-1   Filed 02/25/24   Page 18 of 24

95.     As a direct and proximate result of the acts and omissions alleged herein, Plaintiff has suffered damages in an amount to be proven at trial, but expected to be not less than three million, five hundred thousand ($3,500,000.00) in compensatory damages, plus interest, costs, expenses and attorney's fees, in addition to an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct.

### FIFTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

96.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "95" as if fully set forth herein.

97.     Defendant SHAH's acts in duping Plaintiff BHAGAT into granting her unauthorized access to Dordi's IG Account, and then just one hour after hacking into the IG Account and posting/messaging the defamatory content, disingenuously sending Dordi messages informing him that his IG Account must have been "hacked" and instructing Dordi to report the incident to META knowing that it would result in Plaintiff BHAGAT's termination, constitutes extreme and outrageous conduct.

98.     Defendant SHAH's conduct leading to Plaintiff BHAGAT's termination was charged only by spite and animosity as a result of her being jaded by her failed online dating connections and/or her envy over Plaintiff BHAGAT's continued employment with META when she had been terminated/laid off. Defendant SHAHS's motives and conduct go beyond all possible bounds of decency and should be regarded as atrocious.

99.     Defendant SHAH acted knowing Plaintiff BHAGAT'S termination from META

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

meant that he would lose his income, lose all benefits and equity he would have accrued at META, and most importantly, would lose his reputation and suffer significant damage to his earning potential.

100.    The loss of Plaintiff BHAGAT's reputation meant that not only was BHAGAT not able to continue to work for META, the seventh largest company in the World, but also that future employment prospects would be impacted.

101.    Defendant SHAH acted with intent to cause, or with disregard of a substantial probability of causing, severe emotional stress to Plaintiff BHAGAT.

102.    Defendant SHAH's extreme and outrageous conduct did cause, and continues to cause, Plaintiff BHAGAT severe emotional distress, anguish, and/or psychological harm.

103.    Defendant SHAH's conduct demonstrates a high degree of moral culpability or willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

104.    As a direct and proximate result of Defendant SHAH's conduct, Plaintiff BHAGAT has sustained damages including, but not limited to, severe emotional distress, mental anguish, pain and suffering, and reputational harm in an amount to be proven at trial, inclusive of an award punitive damages in an amount to be determined at trial sufficient to Defendant SHAH from engaging in similar deplorable conduct.

### SIXTH CAUSE OF ACTION
#### (Negligent Infliction of Emotional Distress)

105.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "104" as if fully set forth herein.

106.    Defendant SHAH owed Plaintiff BHAGAT a general duty to use reasonable care to avoid causing emotional distress to Plaintiff BHAGAT through her own actions.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

107.     Defendant SHAH breached her duty of care by unreasonably causing emotional distress to Plaintiff BHAGAT through her aforesaid intentional, negligent, and reckless acts and omissions.

108.     Defendant SHAH's conduct did cause, and continues to cause, Plaintiff BHAGAT severe emotional distress, anguish, and/or psychological harm.

109.     Defendant SHAH's conduct demonstrates a high degree of moral culpability or willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

110.     As a direct and proximate result of Defendant SHAH's conduct, Plaintiff BHAGAT has sustained damages including, but not limited to, severe emotional distress, mental anguish, pain and suffering, and reputational harm in an amount to be proven at trial, inclusive of an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct.

### SEVENTH CAUSE OF ACTION
#### (Prima Facie Tort)

111.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "110" as if fully set forth herein.

112.     As alleged above, Defendant SHAH's acts and omissions constitute an intentional infliction of harm against Plaintiff BHAGAT.

113.     Defendant SHAH's intentional infliction of harm was without excuse or justification, and done by an act or series of acts that would otherwise be lawful.

114.     Malice or disinterested malevolence was the sole motivating factor in Defendant SHAH's acts and omissions.

115.     As a direct and proximate result of Defendant SHAH's actions, Plaintiff BHAGAT

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

suffered special and measurable losses and special damages including: (1) loss of employment; (2) loss of income; (3) loss of equity (i.e. unvested stock units); and (4) loss of reputation and earning potential.

116.     The conduct of Defendant SHAH constitutes *prima facie* tort, in that the Defendant intentionally engaged in the conduct alleged above, that she did so without justification and that, upon information and belief, she did so solely to harm the Plaintiff.

117.     Defendant SHAH's conduct demonstrates a high degree of moral culpability or willful or wanton negligence or recklessness indicating a conscious disregard for the rights of others thus warranting an award of punitive damages.

118.     As a direct and proximate result of Defendant SHAH's conduct, Plaintiff BHAGAT has sustained damages in an amount to be proven at trial, but expected to be not less three million, five hundred thousand ($3,500,000.00) in compensatory damages,  plus interest, costs, expenses and attorney's fees, in addition to an award for severe emotional distress, anguish, and/or psychological harm in an amount to be proven at trial, plus punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.   On the First Cause of Action, in an amount to be proven at trial, but expected to be not less than:

   a.   three million, five hundred thousand ($3,500,000.00) in compensatory damages;

   b.   an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct; and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/23/2024

    c.   interest, costs, expenses and attorney's fees;

2.   On the Second Cause of Action, an amount to be determined at trial, plus interest, costs, expenses and attorney's fees.

3.   On the Third Cause of Action, in an amount to be proven at trial, but expected to be not less than:

    a.   three million, five hundred thousand ($3,500,000.00) in compensatory damages;

    b.   an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct; and

    c.   interest, costs, expenses and attorney's fees;

4.   On the Fourth Cause of Action, in an amount to be proven at trial as and for damages including, but not limited to, severe emotional distress, mental anguish, pain and suffering, and reputational harm, inclusive of an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct;

5.   On the Fifth Cause of Action, in an amount to be proven at trial as and for damages including, but not limited to, severe emotional distress, mental anguish, pain and suffering, and reputational harm, inclusive of an award punitive damages in an amount to be determined at trial sufficient to deter to Defendant SHAH from engaging in similar deplorable conduct;

6.   On the Sixth Cause of Action, in an amount to be proven at trial as and for damages including, but not limited to, severe emotional distress, mental anguish, pain and suffering, and reputational harm, inclusive of an award punitive damages in an amount to be determined at trial sufficient to deter to Defendant SHAH from engaging in similar deplorable conduct;

7.   On the Seventh Cause of Action in an amount to be proven at trial, but expected to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

be not less than:

    a.   three million, five hundred thousand ($3,500,000.00) in compensatory damages;

    b.   an award for Plaintiff's severe emotional distress, mental anguish, pain and suffering, psychological harm, and reputational harm in an amount to be determined at trial;

    c.   an award punitive damages in an amount to be determined at trial sufficient to deter Defendant SHAH from engaging in similar deplorable conduct; and

    d.   interest, costs, expenses and attorney's fees;

8.   Such other and further relief as this Court deems just, proper, and equitable, including costs.

Dated: New York, New York
       February 22, 2024

Respectfully Submitted,

**CRISCIONE RAVALA, LLP**

By: */s/ Salman Ravala*
M. Salman Ravala, Esq.
250 Park Avenue, 7th Floor
New York, NY 10177
T: (212) 920-7142
F: (800) 583-1787
E: SRavala@lawcrt.com
*Attorneys for Plaintiff*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:24-cv-01424-VEC-RFT    Document 1-1    Filed 02/25/24    Page 24 of 24    RECEIVED NYSCEF: 02/23/2024

## VERIFICATION

COUNTY OF   Hidalgo    )
)ss.:
STATE OF   Texas    )

    **VIRAL BHAGAT** being duly sworn, states that he is the Plaintiff in this action and that

he has read the forgoing Verified Complaint and knows the contents thereof; the same is true to

his knowledge, except as to matters therein stated to be alleged upon information and belief, and

as to those matters he believes them to be true.

*Viral Bhagat*
VIRAL BHAGAT

Sworn to before me this
22   day of February, 2024



DAVID LEE FLORES
ELECTRONIC NOTARY PUBLIC
STATE OF TEXAS
NOTARY ID: 132861072
COMISSION EXP: JAN 11, 2025

Notary Public
Document Notarized using a Live Audio-Video Connection

## CERTIFICATE OF CONFORMITY

    That the undersigned does hereby certify that he/she is a notary public duly licensed in the

State of _____ Texas _____; that he/she is a person duly qualified to make this Certificate

of Conformity pursuant to N.Y. CPLR § 2309(c) and N.Y. RPL 299-a; that he/she does hereby

certify that the verification upon this document of VIRAL BHAGAT in the above-captioned matter

was taken in the manner prescribed by the laws of the State of _____ Texas _____ and that

the form of verification conforms to the laws of the State of _____ Texas _____.

IN WITNESS WHEREOF, I have hereunto set by hand this 22 day of _____ February _____, 2024.

Print Name: David Lee Flores

Notary Public No.: 132861072

Address:   110 Coliseum Crossing Hampton    VA    23666

23

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.    23 of 23