# MELISSA YANG PLLC

136 MADISON AVE., 6TH FL.,
NEW YORK, N.Y. 10016
(646) 516-9529
WWW.MELISSAYANGPLLC.COM

February 7, 2025

**VIA ECF AND EMAIL**
([TarnofskyNYSDChambers@nysd.uscourts.gov](mailto:TarnofskyNYSDChambers@nysd.uscourts.gov))
The Honorable Robyn F. Tarnofsky
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Re: ***Viral Bhagat v. Anuja Sharad Shah a/k/a Anu Shah***, **No. 24-CV-01424(VEC)**

Dear Magistrate Judge Tarnofsky:

Pursuant to Section III.B. of Your Honor's Individual Rules, we write on behalf of defendant Anuja Sharad Shah a/k/a Anu Shah ("Shah") to request a pre-motion discovery conference to address whether non-party Rushad Dordi ("Dordi") should be compelled to comply with Shah's subpoena (the "Subpoena") and sit for a deposition and produce documents.

This letter is being filed on ECF in redacted form because it cites to documents that Bhagat had designated as Confidential pursuant to the Stipulation of Confidentiality & Protective Order (the "CPO"). (ECF No. 81.) Pursuant to Section 3 of the CPO and Section III.E of Your Honor's Individual Rules, we sent an email on early morning on February 5 to Bhagat's counsel requesting that Bhagat de-designate these documents or, alternatively, to identify the grounds for Bhagat's confidentiality concerns. We noted that if Bhagat does not respond by February 6 at 5:00 p.m., we will assume Bhagat wishes to maintain his confidentiality designations. Bhagat did not respond to our email as of the afternoon of February 7.

I. **BACKGROUND OF THE ACTION AND THE SUBPOENA TO DORDI**

Dordi is a central figure in this action even though he is not a party.

In his Complaint, Bhagat alleges that Shah should be held liable for making various misrepresentations and omissions to him in an attempt to gain access to Dordi's Instagram account. (ECF No. 1-1 ¶¶ 18–19.) After he used his employee access at Meta Platforms, Inc. ("Meta") to reset Dordi's Instagram account, Bhagat alleges that Shah made salacious and harassing posts on Dordi's Instagram account designed to cause Dordi embarrassment and shame. (*Id.* ¶¶ 26–28.) According to Bhagat, Shah then informed Dordi that his account was hacked and encouraged him to file a complaint with Meta, which ultimately led to Bhagat's termination. (*Id.* ¶¶ 29–34.) Bhagat also alleges that Shah previously "hacked" Dordi's social media accounts. (*Id.* ¶ 20.)

  Dordi also plays a significant role in the scope of discovery in this action.  In support of his efforts to obtain third-party discovery, Bhagat asserts a theory that Shah engaged in a pattern of targeting men on dating and social media platforms, gaining access to their private social media accounts, and posting lewd and harassing content on the same.  (ECF No. 63 at 5, 6; *see generally* ECF Nos. 83, 84.)  As made plain by Bhagat's deposition testimony, Bhagat's theory is premised on Dordi's alleged interactions with Shah.  This is because Bhagat never met Shah in person, and he never alleged that Shah *harassed him* or accessed any of *his social media accounts*. (*See generally* ECF No. 1-1.)

  Dordi, for his part, has been a willing and active participant in this action.  Among other things, Dordi provided Bhagat with the documents that were annexed to Bhagat's third-party subpoenas to Meta, Pinger, Inc. ("Pinger"), and TextNow, Inc. ("TextNow").  (*See* 1/6/25 Letter from M. Ravala to M. Yang, annexed hereto as **Exhibit 1**, at 1.)  And discovery produced in this action shows that Dordi and Bhagat have been actively plotting to harass and harm Shah by coordinating lawsuits and planting false and inflammatory articles about her on the Internet for the purpose of impugning her reputation.[1]  Finally, given Bhagat's theory that Shah engaged in a pattern of harassment against Dordi, among others, Shah is entitled to get discovery from Dordi that shows Dordi *harassed* her through, among other things, burner numbers.

  Given that Dordi is at the forefront of this lawsuit, it should come as no surprise that Shah wishes to obtain his testimony and documents in his possession, custody, and control.  On December 16, 2024, Shah's counsel asked Dordi's counsel if he would accept service of a subpoena on Dordi's behalf.  Despite promising to provide an answer several times, Dordi's counsel failed to do so.  (12/16/24–1/21/25 Email Chain between M. Yang and A. Miltenberg, annexed hereto as **Exhibit 2**, at 7–10.)  All attempts to locate Dordi were unsuccessful, and accordingly, on January 8, 2025, the Court authorized Shah to serve Dordi by email to his counsel.  (ECF No. 76.)  Shah emailed Dordi's counsel that same day with the Subpoena along with a directive to send that Subpoena to Dordi.  (Ex. 2 at 6–7.)

  The Subpoena sought Dordi's deposition on February 10 and the production of documents by January 17.  (1/6/25 Subpoena to Rushad Dordi, annexed hereto as **Exhibit 3**.)  When Shah did not receive a production by January 17, her counsel emailed Dordi's counsel to inquire as to its status.  (Ex. 2 at 6.)  When Dordi's counsel required more time, Shah agreed to an extension of January 24.  (*Id.* at 1–2.)

  On January 24, Dordi's counsel sent a letter setting forth his first objection to the Subpoena, which contains a number of boilerplate objections, including an objection that the Subpoena is overly broad, unduly burdensome, and oppressive because the parties are in possession of some of the documents requested.  In this letter, Dordi's counsel also states that February 10 does not work as a deposition date and that Dordi "will not sit for any deposition until such time as an agreement is reached as to the scope of his testimony[.]"  (1/24/25 Letter from A. Miltenberg to M. Yang,

---

[1] We raised the issue of these website posts with the Court at a conference held on January 10.  While we were able to remove the websites posts that were submitted to the Court, we note that Bhagat and Dordi recently made new postings as recently as mid-January 2025 that include *new* defamatory statements about Shah.

Magistrate Judge Tarnofsky
February 7, 2025
Page **3** of **9**

annexed hereto as **Exhibit 4**, at 1–2.)[2]  On January 27, Dordi's counsel sent *another* objection to the Subpoena, repeating many of the same objections raised in their prior letter of January 24.[3] (*Compare* Ex. 4, *with* 1/27/25 R. Dordi Objection to Subpoena, annexed hereto as **Exhibit 5**.)  In addition, Dordi contends in the January 27 objection that the Subpoena fails to provide him with a reasonable amount of time to respond (Ex. 5 at 1), even though Shah's extension gives him sixteen (16) days to comply, which is more time than that contemplated under Rule 45.  Fed. R. Civ. P. 45(d)(2)(B) (requiring an objection to be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served.")

On January 27, the same day Dordi served his second objection to the Subpoena, Shah sent Dordi a letter addressing his objections to the Subpoena. (*See generally* 1/27/25 Letter from M. Yang to K. Gorycki, annexed hereto as **Exhibit 6**.)  Shah also cited case law supporting her request for discovery that could be, arguably, cumulative in that letter and requested clarification and authority supporting Dordi's refusal to produce documents and sit for a deposition. (Ex. 6 at 3–4.)  Dordi's counsel snubbed Shah's efforts for clarification and requests to discuss the basis for Dordi's concerns, stating in emails annexed hereto as **Exhibit 7** that:

- "We stand on our objections.  Mr. Dordi will not sit for a deposition absent an agreement as to scope as previously stated.  Our objections were stated in the correspondence you received last Friday."  (Ex. 7 at 8.)

- "Our objections are plainly stated under the Federal Rules.  We do not need to provide you with authority.  Please review FRCP26 and FRCP45." (*Id.*)

- "We had no call scheduled.  You 'penciled it in' and then refused to put it in ink on my calendar because you wanted me to spend our client's time and money providing further justification for our plainly stated objections." (*Id.* at 6.)

The parties met and conferred telephonically on February 6.  On that call, Dordi's counsel did not provide much more detail about the basis for Dordi's objections other than those stated herein.  Following the call, Dordi's counsel conceded to one request in the Subpoena.  Unfortunately, Dordi's counsel maintains all other objections, putting the parties at an impasse with regards to Dordi's deposition and the other four requests for documents in the Subpoena.

### II.    SHAH IS ENTITLED TO DEPOSE DORDI WITHOUT ANY PRECONDITIONS

During the telephonic meet and confer, Dordi's counsel reasserted the objection that Dordi will not sit for a deposition until the parties reach an agreement as to the scope of that deposition.  Dordi has a pending family court matter and a separate civil action against Shah, and Dordi's counsel advised that Shah should not elicit testimony that would pertain to those matters.  Yet, as

---

[2] Dordi's counsel mistakenly identified the caption for Dordi's action even though the Subpoena was served in connection with this action.

[3] Dordi's objections sent on January 27 are waived because Dordi sent them *after* the January 24 deadline to respond to the Subpoena.

Magistrate Judge Tarnofsky
February 7, 2025
Page **4** of **9**

we informed Dordi's counsel, there are many overlapping issues, including whether Dordi has harassed Shah and vice versa, and Shah should not be precluded from obtaining Dordi's testimony concerning the same, particularly when Bhagat has relied upon that harassment as a basis to obtain third-party discovery. (*See* ECF No. 63 at 5, 6; *see generally* ECF Nos. 83, 84.)

After the meet and confer, Dordi's counsel sent an email stating that counsel "will not agree to have [Dordi] sit for a fishing expedition which subjects him to embarrassment, annoyance or further harassment from your client." (Ex. 7 at 1.) Dordi's counsel, however, has never articulated what they deem to be a fishing expedition, or what they would consider to be embarrassing, annoying, or harassing. (*Id.*) In any event, Dordi's attendance at a deposition may be compelled by subpoena without leave of court and the examination proceeds notwithstanding any recorded objections. *See* Fed. R. Civ. P. 30(a)(1), (c)(2). The only manner in which Dordi's counsel may limit the scope of his deposition is "*during* the deposition" at which time counsel may instruct Dordi not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion" seeking to limit the deposition on the ground that it is being conducted in bad faith. *Id.* Rule 30(c)(2), (d)(3)(A) (emphasis added); *see also Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 557 (S.D.N.Y. 1994) (noting that instructing a deponent not to answer for any other reason is "generally inappropriate").

Dordi has failed to identify any authority requiring Shah to agree to any limitation before taking Dordi's testimony, and he should, thus, be compelled to sit for a deposition.

### III.   DORDI MUST COLLECT AND PRODUCE THE REQUESTED DOCUMENTS

The Subpoena seeks five discrete categories of documents:

1. Documents and communications sent to or received by Bhagat ("Request No. 1");
2. Documents and communications sent to or received by Shah ("Request No. 2");
3. Documents and communications concerning the unauthorized access to any of Dordi's social media accounts ("Request No. 3");
4. Documents and communications exchanged with Meta Platforms, Inc. ("Meta"), including any related to Dordi's complaint of unauthorized access to this social media accounts ("Request No. 4"); and
5. Non-privileged documents and communications concerning this action or Shah ("Request No. 5").

(*See generally* Ex. 2.)

In his written objections, Dordi objected to the production of documents responsive to the requests as they are stated in the Subpoena. (*See generally* Exs. 4, 5.) After the parties' meet and confer on February 6, Dordi's counsel conceded to the production of Request No. 4. (*See* Ex. 7 at 1.) Given the foregoing, the parties' dispute extends to Request Nos. 1, 2, 3, and 5 only.

**A. Request No. 1: Documents and Communications with Bhagat**

Dordi objected to the production of his communications with Bhagat in Request No. 1 on the grounds that "[a]ny and all" of Dordi's communications with Bhagat has no relevance to this action and are not proportional to the needs of the case, it is a fishing expedition, it would cause Dordi to suffer undue burden and expense by having to collect and produce ESI twice, and Bhagat is in possession of all communications with Dordi. (Ex. 4 at 1; Ex. 5 at 3.) These objections are meritless for the following reasons.

      i.      <u>Relevance Objection</u>

Dordi's assertion that Request No. 1 seeks the production of irrelevant documents is almost frivolous. Dordi and Bhagat only began to speak because of Shah and the events giving rise to this lawsuit; they did not know each other beforehand. Indeed, at his deposition, Bhagat testified that he and Dordi first spoke within a week of his termination from Meta and that he reached out to Dordi by using an email address that was included in Shah's message to him on LinkedIn. (Excerpts of 1/21/25 Deposition Transcript of V. Bhagat, annexed hereto as **Exhibit 8**, at 14:10–17:8.) As confirmed by Bhagat's production, Bhagat emailed Dordi at rushad.dordi@gmail.com – the same email address associated with Dordi's Instagram account (ECF No. 1-1 ¶ 25) – begging Dordi to respond because he wants to "understand what actually happened" because he "was fired from Meta for helping [Dordi] retrieve [his] Instagram account in March this year." (7/23–7/24/23 Email from V. Bhagat to R. Dordi, annexed hereto as **Exhibit 9**.)

Discovery produced in this action shows that after Dordi and Bhagat connected, Dordi has been influencing this action from behind the scenes. Dordi has been sending Bhagat documents and information to use in this lawsuit, which Bhagat has used as exhibits to his discovery requests to Shah as well as exhibits to his subpoenas to Meta, Pinger, and TextNow. (*See* Ex. 1 at 1 (confirming that Dordi provided Bhagat with the screenshots annexed to Meta subpoena and list of burner numbers annexed to Pinger and TextNow subpoenas); Ex. 8 at 22:15–23 (testifying exhibit annexed to Meta subpoena was provided by Dordi.) At his recent deposition, Bhagat also testified that his assertion that Shah has been harassing him and Dordi is based solely on information provided to him *by Dordi*. (Ex. 8 at 20:15–21:17; *id.* at 23:8–24:5; *id.* at 37:14–38:13.) If Bhagat is permitted to rely on a theory that Shah engaged in a pattern of harassment to obtain discovery in this action, and that theory is premised upon assertions made by Dordi, then Shah must be permitted to ascertain *what* Dordi told Bhagat and the underlying information Dordi relies upon to make those assertions to Bhagat to disprove the same. *See* Fed. R. Evid. 401(a) ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence . . . .").

Finally, Shah is entitled to obtain documents that bears on a witness's credibility, including "the nature and the extent of a witness' motives and his interest in the outcome of the case . . . ." *U.S. v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 215, 218-19 (S.D.N.Y. 1974). Thus, Dordi's communications with Bhagat are also necessary to explore whether Bhagat's lawsuit is part of a joint campaign by Bhagat and Dordi to harass, defame, and publicly humiliate Shah as opposed to a bona fide and credible claim for damages. Disturbingly, discovery has revealed that Bhagat and

Dordi (and others) have teamed up to stalk Shah's movements and to harass and publicly humiliate her, including by filing coordinated lawsuits against her. (*See, e.g.*, 12/9-12/10/23 What's App thread among V. Bhagat, R. Dordi, and J. Kothari, annexed hereto as **Exhibit 10**, where group tracks Shah's trip to London and Dordi states that "[t]he more fronts we hit her on the better we will all be" and that "if she has lawsuits . . . filed and won against her in a certain place, she is going to have a hard time finding employment or living in that place"); 12/13/23 What's App thread among V. Bhagat, R. Dordi, and J. Kothari, annexed hereto as **Exhibit 11**, (discussing planting negative stories about Shah in the press).)

Given all of the above, Dordi's counsel has absolutely no basis to claim that communications between Dordi and Bhagat do not relate to the claims or defenses in this action. Shah is entitled to explore Dordi's and Bhagat's communications related to her and this action as well as their motives for coordinating their lawsuits and harassing her. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401(a).

      ii.      <u>Fishing Expedition</u>

In light of the arguments raised in Section II.A.i, Shah does not agree that Request No. 1 is a fishing expedition, and Dordi's counsel has not articulated the basis for the same. To the extent Bhagat and Dordi discussed matters other than Shah and this action (which we find hard to believe given that the two only began to speak as a result of the foregoing), we believe it is appropriate for Dordi's counsel to advise us of those topics and the volume for the same and we can ascertain ways (if any) to excerpt non-relevant communications from Dordi's collection of documents.

      iii.      <u>Communications in Bhagat's Possession</u>

Dordi contends that he should not endure the expense of producing his communications with Bhagat because Bhagat is in possession of those communications. Yet, as Shah noted in her January 27 letter (Ex. 6 at 3), this objection has been repeatedly rejected by courts in the Second Circuit. *See, e.g., Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, No. 16 MC 2778, 2016 WL 6902140, at *4 (E.D.N.Y. Nov. 23, 2016) ("[C]onsistent with precedent from within this Circuit, RMI should not be excused from responding to the subpoena on the ground that Amtrak already has the documents sought."); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) ("While [the subpoenaed party's] files for this period may not contain anything that is not already in [the requesting party's] files, this fact alone is an insufficient ground on which to quash the subpoena."); *Burns v. Bank of Am.*, No. 03 Civ. 1685, 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007) ("Even if Bank of America already possesses many of the documents in question, this is not a bar to its taking discovery [from non-party] . . . ."). Dordi's counsel did not respond concerning these cases and simply noted that she is not required to provide authority for Dordi's objections. (Ex. 7 at 8.)

In addition, Shah is entitled to an independent collection and production of communications that Dordi exchanged with Bhagat. Bhagat and Dordi communicated on What's App, and, as recently as September 2024, Bhagat turned on a feature on What's App that automatically deletes the messages within a period of time after the messages are sent. (A

compilation of documents showing Bhagat turned on this deletion feature is annexed hereto as **Exhibit 12**.) While we understand that an ESI vendor may be able to retrieve deleted messages, there are instances where those deleted messages cannot be retrieved. Putting aside Bhagat's spoliation issue because these messages were deleted during the pendency of this lawsuit, Shah is entitled to get discovery from Dordi in the event he has communications with Bhagat that Bhagat no longer has in his possession, custody, or control.

   iv.  ESI Vendor Collection

  Dordi's objection that he may be required to collect and produce documents more than once similarly lacks any support in the law. E-discovery best practice is to collect potentially relevant ESI *once*, confirm that all potentially relevant documents are preserved, and then, as needed, apply search parameters to the collected set to identify documents responsive to any given request.[4] There is no reason Dordi will be required to collect ESI twice. The mere fact that Dordi may be required to make overlapping *productions* in two cases does not constitute undue burden, particularly given the fact that Dordi and Bhagat are *purposefully* suing Shah in different jurisdictions for strategic reasons. (*See* Ex. 11 ("The more fronts we hit her on the better we will all be.").) Dordi's counsel has provided absolutely no legal authority or evidence of burden supporting this objection. *Compare* Ex. 7 at 8 ("We do not need to provide you with authority"), *with Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 5 (E.D.N.Y. 2022) ("The party objecting to a discovery request must describe the burden of responding to the request by submitting affidavits or offering evidence revealing the nature of the burden.").

  **B. Request No. 2: Communications Exchanged with Shah**

  On February 6, Dordi's counsel advised in an email that Dordi does not have any communications exchanged with Shah responsive to Request No. 2. (Ex. 7 at 1.) As an initial matter, we question whether Dordi implemented an appropriate litigation hold given that he is involved in two pending lawsuits. Nonetheless, while we cannot force Dordi to produce what he does not have, we do not believe counsel's assertion was supported by a good-faith search through Dordi's documents because we understand no collection has been made. Further, we note that Request No. 2 is not limited to Dordi's use of his known telephone numbers. Whereas Dordi informed Bhagat that Shah harassed him, Shah takes the position that Dordi harassed her. By way of example, Shah produced a video from a friend who matched with Dordi on Hinge, an online dating platform. As reflected in the snapshot of the video pasted below on the left, Dordi provides his number to Shah's friend as (305) 563-4461, the same number Dordi used to harass Shah anonymously in the text message below on the right.[5]

---

[4] *See Primer on Managing Electronic Discovery in Small Cases* at 9-10, The Sedona Conference (December 2022), available at https://thesedonaconference.org/sites/default/files/publications/Primer-on-ediscovery-in-small-cases-Public-Comment-December-2022.pdf (recommending single early collection in small cases to ensure preservation and noting that "[a]n additional benefit of collecting relevant ESI at the outset of a case is that it may eliminate the need to revisit these data sources with the client for collection later . . . .").

[5] Shah produced the video in native form at AS000208 and the text message as AS000186.

Magistrate Judge Tarnofsky
February 7, 2025
Page **8** of **9**



For these reasons and those articulated in Section II.A.i, *supra*, Dordi is required to perform a search and produce any documents in his possession, custody, and control responsive to Request No. 2 or provide information as to why Dordi no longer possesses those documents and communications.

### C. Request No. 3: Documents and Communications Concerning the Unauthorized Access of Dordi's Social Media Accounts

Dordi's objection to Request No. 3 for documents and communications concerning the unauthorized access of his social media accounts (Ex. 4 at 1-2; Ex. 5 at 3-4) is puzzling because this action is premised upon allegations that Shah accessed Dordi's Instagram account without authorization (*see generally* ECF No. 1-1). Dordi's contention that Shah is in possession of these documents makes no sense. He cannot withhold documents based on his belief that Shah would have documents responsive to Request No. 3 because she accessed his accounts without authorization. Further, even if Shah does have documents, this is not a valid basis for Dordi not to produce them from his own files. (*See* Section II.A.iii, *supra*.)

Dordi offers to produce documents that are solely in his possession if Shah could identify them (Ex. 5 at 4), but this objection is based upon an unreasonable and nonsensical premise. Shah has no way of knowing what Dordi has in his possession that are not in her possession. Thus, Dordi is required to search and produce documents responsive to Request No. 3.

### D. Request No. 5: Non-Privileged Communications About this Action or Shah

Dordi's objection that Request No. 5 seeks the production of non-relevant documents is belied by the request itself (Ex. 4 at 2; Ex. 5 at 4), which seeks communications about this action or Shah (Ex. 2 at 6).

Dordi's objection that Request No. 5 also seeks privileged documents is not made in good faith. Request No. 5 *expressly excludes* any communications with Dordi's attorneys. (*See id.* (excluding communications with Mr. Ravala between January 1, 2023 and February 1, 2024, as well as those with Mr. Miltenberg from February 22, 2024 to the present).) Shah has no interest in invading Dordi's attorney-client privilege and seeks only *non-privileged* documents and communications concerning this action or Shah. Dordi's counsel has provided no legal authority whatsoever justifying the position that "Dordi will not produce any documents or communications that are responsive to [Request No. 5]." (Ex. 5 at 4.) Nor has Dordi's counsel provided any legal authority supporting their refusal to provide a privilege log. *Compare* Ex. 7 at 8 ("We do not need to provide you with authority" *with* Fed. R. Civ. P. 26(b)(5)(A) (requiring privilege log when party "withholds information otherwise discoverable"); Fed. R. Civ. P. 45(e)(2) (requiring subpoenaed party to identify information for privilege assertions so parties could assess propriety of such assertions); Local Civil Rule 26.2 of the Southern District of New York (identifying information that must be provided when a party asserts a claim of privilege).

Thus, Dordi must also collect and produce documents responsive to Request No. 5 and produce a privilege log to the extent Dordi withholds responsive, but privileged documents.

***

Dordi has no basis for refusing to comply with the Subpoena or in requiring Shah to seek a discovery conference to obtain basic discovery. Dordi's refusal to discuss Shah's responses to his objections or even provide authority supporting his objections amounts to bad faith conduct. (*See generally* Ex. 7.) To the extent we are required to file a formal motion to compel, we intend to seek costs. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (confirming district court's inherent power to impose sanctions for bad faith conduct). Nonetheless, to avoid the wholly unnecessary cost of motion practice, as well as the need to formally move for fees, *see* Fed. R. Civ. P. 37(a)(5), Fed. R. Civ. P. 45(g), Shah respectfully requests a pre-motion discovery conference to discuss Dordi's objections to the Subpoena.

Respectfully submitted,

Melissa Yang

Enclosures (12)

cc: All counsel of record (via ECF)
Kara Gorycki, Esq. (via email w/unredacted enclosures)
Andrew T. Miltenberg, Esq. (via email w/unredacted enclosures)