USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   6/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

VIRAL BHAGAT,                                     :
                                                 :
                              Plaintiff,         :          24-CV-1424 (VEC)
                                                 :
            -against-                            :          OPINION AND ORDER
                                                 :          ADOPTING REPORT
                                                 :          AND
ANUJA SHARAD SHAH,                               :          RECOMMENDATION
                                                 :
                              Defendant.         :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Viral Bhagat ("Plaintiff") filed this lawsuit in state court against Anuja Sharad Shah

("Defendant") asserting several claims, including fraud, tortious interference with contract,

tortious interference with a business relationship, and *prima facie* tort.  Plaintiff alleges that his

employment with Meta was terminated after Defendant deceived him into giving her access to a

third party's Instagram account.  *See generally* Compl., Dkt. 1-1.  Defendant removed this action

from state court and answered the Complaint.  *See* Notice of Removal, Dkt. 1; Answer, Dkt. 14.

On December 27, 2024, the Court referred this action to Magistrate Judge Robyn F. Tarnofsky

for general pretrial supervision and dispositive motions requiring a Report and Recommendation

("R&R").  *See* Dkt. 59.  In the year-and-a-half since this case was referred, Judge Tarnofsky has,

among other things, issued R&Rs recommending that the Court (i) deny Defendant's motions

challenging the Court's subject matter jurisdiction, *see* R&R, Dkt. 358, and (ii) grant in part and

deny in part Defendant's motion for judgment on the pleadings, *see* R&R, Dkt. 436, both of

which the Court adopted in full, *see* Dkt. 487.[1]  Judge Tarnofsky has also refereed many, many discovery disputes and squabbles between the vexingly litigious parties.

Now before the Court is Judge Tarnofsky's R&R recommending that Defendant's pending motion for summary judgment on Plaintiff's remaining fraud claim and tortious interference with a business relationship claim, Dkt. 571, be denied in full.  *See* R&R, Dkt. 660.[2] Defendant objected to the R&R.  *See* Dkt. 682 ("Def. Obj.").[3]  For the following reasons, Defendant's objections are OVERRULED; the Court ADOPTS the R&R in full.

## BACKGROUND

The Court assumes the parties' familiarity with the background of this protracted litigation.[4]  In brief, Plaintiff's claims stem from a 2023 incident in which Defendant asked Plaintiff, then a Meta employee, to assist her purported friend, Rushad Dordi, in regaining control of Dordi's purportedly "hacked" Instagram account.  *See* Def. Rule 56.1 Statement of Material Facts, Dkt. 573 ("Rule 56.1 Statement") ¶¶ 5–6; Pl. Rule 56.1 Counterstatement of Material Facts, Dkt. 584 ("Rule 56.1 Counterstatement") ¶¶ 5–6.  Defendant represented to Plaintiff that Dordi, a friend of Defendant, had lost access to his Instagram account to a hacker and that the hacker was posting disturbing content on Dordi's profile.  *See* Pl. MSJ Opp., Dkt.

---

[1]    On August 18, 2025, Plaintiff's claims for negligent misrepresentation, tortious interference with contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and *prima facie* tort were dismissed with prejudice.  *See* Dkt. 487.  Plaintiff's sole remaining claims are for (i) fraud and (ii) tortious interference with an employment relationship.  *See id.*

[2]    For purposes of this Opinion, and unless otherwise specified herein, references to the "R&R" are to Judge Tarnofsky's April 2, 2026, Report and Recommendation on Defendant's now-pending motion for summary judgment.  *See* Dkt. 660.

[3]    Defendant's motion for summary judgment was submitted through her then-counsel.  By the time objections to the R&R came due, Defendant's attorney had been relieved; Defendant's objections were prepared and submitted *pro se*.  At all times relevant to the now-pending summary judgment motion, Plaintiff has represented himself *pro se*.

[4]    For a more detailed background and procedural history, the Court refers the reader to the R&R at 1–6.

583 at 4–5 (citing Bhagat Decl., Dkt. 582 ¶¶ 7–13, 18; Dkt. 582-5 ("LinkedIn Messages"); Rule 56.1 Counterstatement ¶¶ 47–48, 61). Defendant, a former Meta employee herself, instructed Plaintiff to submit an internal "Oops Feedback Form" to Meta's Centralized Escalation Support Team on Dordi's behalf. *See* Pl. MSJ Opp. at 4–5 (citing Bhagat Decl. ¶¶ 5–6, 11; LinkedIn Messages); Rule 56.1 Counterstatement ¶ 48. To facilitate her request, Defendant provided Plaintiff with Dordi's contact information so that Meta could verify the credentials associated with the purportedly compromised Instagram account. Rule 56.1 Statement ¶¶ 6–8; Rule 56.1 Counterstatement ¶¶ 6–8; *see also* LinkedIn Messages. After some pestering by Defendant, *see* LinkedIn Messages, Plaintiff submitted the Oops Feedback Form as requested. Rule 56.1 Statement ¶ 17; Rule 56.1 Counterstatement ¶ 17. Defendant subsequently represented to Plaintiff that Dordi had changed his phone number and created a new email address, and that Plaintiff should use the new credentials to gain access to Dordi's breached account.[5] *See* Rule 56.1 Statement ¶¶ 6–8; Rule 56.1 Counterstatement ¶¶ 6–8. Following a back and forth with Plaintiff, which included Meta informing Plaintiff that it did not appear that Dordi's account had been compromised, *see* LinkedIn Messages, Meta successfully linked Dordi's Instagram account to the second set of contact information that Defendant had provided, *see id.* On April 22, 2023, Defendant informed Plaintiff that she and Dordi had regained control of Dordi's account. *See* Rule 56.1 Counterstatement ¶ 13; *see also* LinkedIn Messages.

Dordi, however, was hearing a different version of events. At around the same time that Defendant told Plaintiff that Dordi's Instagram issue had been remedied, Defendant told Dordi

---

[5] Only the first set of contact information that Defendant provided was valid; Dordi's actual email address is "rushad.dordi@gmail.com," not the "rusahdkdordi2023@gmail.com" address that Defendant later provided to Plaintiff and that Meta ultimately used to reset Dordi's Instagram account. *See* R&R at 3; *see also* Rule 56.1 Statement ¶ 7; Rule 56.1 Counterstatement ¶ 7.

that his account was *presently* being hacked; she sent him a voice note to warn him and advised him to report the incident to Meta, which Dordi did.  Rule 56.1 Statement ¶¶ 13, 22; Rule 56.1 Counterstatement ¶ 13, 22.[6]  Apparently, this second purported hacking incident (the first of which was unbeknownst to Dordi, *see* Dordi Dep. Tr., Dkt. 572-6 at 19:5–9, 23:8–29:24, 51:20–23, 78:2–5, 108:24–109:2, 156:2–7) raised red flags on Meta's end.  Following Dordi's complaint, Meta commenced an investigation into the unauthorized takeover of his Instagram account.  *See* Rule 56.1 Statement ¶ 22; Rule 56.1 Counterstatement ¶ 22.  That investigation ultimately resulted in Meta firing Plaintiff.[7]  *See* Rule 56.1 Statement ¶¶ 26–27; Rule 56.1 Counterstatement ¶¶ 26–27.[8]

## DISCUSSION

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Where

---

[6]    Plaintiff contends that the second (*i.e.*, false) set of contact information that Defendant provided allowed *Defendant* to take over Dordi's Instagram account and that she herself starting "posting embarrassing, sexual content, and [sending] harassing messages" to Instagram users from Dordi's profile.  *See* R&R at 4; *see also* Rule 56.1 Counterstatement ¶¶ 5, 8, 22, 47, 59, 60.  Dordi suspects that Plaintiff is correct.  *See* Rule 56.1 Counterstatement ¶ 60 (citing Dordi Dep. Tr. at 139:1–8).  Defendant denies Plaintiff's contentions, claiming that there is no evidence that the second email address and phone number belonged to her.  *See* Rule 56.1 Statement ¶¶ 8–9.  Her position is disputed by the record.  While Defendant's expert found that "there is no technical basis to conclude that [Defendant] sent or was involved with the messages at issue," Dkt. 572-7 at 5, there is also some evidence supporting a contrary conclusion, *see, e.g.*, Dordi Dep. Tr. at 23:21–24:14; Dkt. 582-6 (TextFree records showing that the phone number Defendant provided to Plaintiff is registered to Defendant's personal email address).  As such, "[t]he question who controlled the second email address and phone number is a disputed factual issue that ultimately boils down to credibility determinations—whether one believes that Plaintiff and Dordi are lying or whether Defendant is lying about the events underlying this suit."  R&R at 4 n.3.

[7]    Plaintiff does not dispute that during the Meta investigation, he falsely represented to Meta that he knew Dordi "personally;" he later disavowed that representation.  *See* Rule 56.1 Statement ¶ 23; Rule 56.1 Counterstatement ¶ 23.

[8]    The parties dispute the cause of Plaintiff's termination.  Defendant argues that Plaintiff was fired because he "lied about knowing Mr. Dordi," in violation of Meta's company policy.  *See* Def. MSJ Br., Dkt. 574 at 9–12; *see also* Rule 56.1 Statement ¶¶ 23–27.  Defendant disagrees, arguing that "this case is not about an employee . . . disregard[ing] policy[,]" but about Defendant "weaponizing [Plaintiff's Meta] access through lies and deception," which inevitably led to his firing.  *See* Pl. MSJ Opp. at 2, 12; *see also* Rule 56.1 Counterstatement ¶¶ 23–27, 62–63.

a party has made specific, written objections to the R&R, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (citing 28 U.S.C. § 636(b)(1)).

To warrant *de novo* review, the objections must be "specific" and "address only those portions of the proposed findings to which the party objects." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011). Absent clear guidance from the Second Circuit on what makes an objection proper, courts in this District have concluded "that a party fails to properly object if she 'makes only conclusory or general objections, or simply reiterates [her] original arguments.'" *Ramgoolie v. Ramgoolie*, No. 22-1409, 2024 WL 4429420, at *2 (2d Cir. Oct. 7, 2024) (alteration in original) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). Thus, if "a party's objections are conclusory or general . . . the district court reviews the [R&R] for clear error." *Pineda*, 831 F. Supp. 2d at 671. An error is clear when it leaves the reviewing court with a "definite and firm conviction that a mistake has been committed." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

Submissions by *pro se* litigants are construed more leniently than submissions by lawyers and are interpreted to raise the strongest arguments they suggest. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006); *see also Goldstein v. Hulihan*, No. 09-CV-6824 (CS) (PED), 2011 WL 4954038, at *1 (S.D.N.Y. Oct. 18, 2011). Nevertheless, even a *pro se* litigant's objections to a magistrate judge's report and recommendation "must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Goldstein*, 2011 WL 4954038, at *1 (quoting *Pinkney v.*

*Progressive Home Health Servs.*, No. 06-CV-5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

## I.    The Court Adopts the R&R in Full

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). As the moving party, Defendant has "the burden of demonstrating an absence of clear and convincing evidence substantiating [Plaintiff's] claims." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 219 (S.D.N.Y. Oct. 17, 2007); *see also Woo v. Times Enter., Inc.*, No. 98 Civ. 9171 (SAS), 2000 WL 297114, at *4 (S.D.N.Y. Mar. 22, 2000).

Although the Court must construe the facts in the light most favorable to the nonmoving party, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019). Accordingly, to defeat a motion for summary judgment, the nonmoving party must produce specific facts showing that there is a genuine issue for trial; a "scintilla of evidence" is not enough. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

When a party moves for summary judgment against a *pro se* litigant, courts afford the nonmoving party "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases). District courts must read a *pro se* litigant's submissions "liberally" and construe them "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Courts "are less demanding of [*pro se*] litigants

generally, particularly where motions for summary judgment are concerned." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). This lower standard for *pro se* litigants does not, however, "relieve [the *pro se* party] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50.

### A. Fraud

To prove a claim for fraud under New York law, a plaintiff must prove that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (2009)). It is a firmly entrenched principle that "summary judgment [] be considered skeptically in cases alleging fraud," as "the issues typically turn on the parties' credibility as to their state of mind." *Volt Electric NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 2d 262, 294 (S.D.N.Y. 2022); *see also* R&R at 11–12.

Defendant's motion for summary judgment targets the third and fourth elements of Plaintiff's fraud claim. First, she argues that, as a matter of law, Plaintiff has not established "justifiable reliance" on Defendant's false representations because Plaintiff had "unfettered access to all of the information and facts upon which to determine the impropriety of his actions," ignored various hints of falsity related to Defendant's representations, and failed to conduct the "minimal diligence" required of an individual that suspects he is being defrauded.

*See* Def. MSJ Br., Dkt. 574 at 9–12.[9]  As to damages, Defendant argues that "Plaintiff's own

conduct"—*i.e.*, his false characterization of his relationship with Dordi during Meta's

investigation into Dordi's purportedly hacked account—"caused his termination," not

Defendant's misrepresentations, and, therefore, "causation [for Plaintiff's damages] cannot be

imputed to Defendant."  *Id.* at 8.

Plaintiff counters that his reliance was justified.  He points to Defendant's "status as a

former Meta employee with apparent insider knowledge of policies and tools" and "[h]er

detailed and urgent description of a hacked account and her insistence that she was protecting a"

friend and victim.  Pl. MSJ Opp. at 12.  Plaintiff asserts that his damages are directly traceable to

his reliance "on [Defendant's] lies: he submitted the Oops [Feedback] [F]orm, which triggered

Meta's investigation and resulted in his termination."  *Id.*

### i.    *Justifiable Reliance*

"[R]easonable reliance is . . . a question normally reserved for the finder of fact and not

usually amenable to summary judgment," *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F.

Supp. 3d 473, 484 (S.D.N.Y. 2018), because "what constitutes reasonable reliance" tends to be a

"nettlesome," "fact-intensive" inquiry, *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393,

407 (S.D.N.Y. 2004).  Still, if the undisputed facts demonstrate that a plaintiff "has the means of

knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of

the representation [at issue], he must make use of those means, or he will not be heard to

---

[9]    Defendant's argument is essentially that Plaintiff was unreasonably foolish to rely on Defendant's representations regarding Dordi's account.  For example, Plaintiff "could have either refused [to help Defendant] on the basis of a policy violation, acknowledged Meta's finding that [] Dordi's account was not actually hacked, or . . . [conducted] the minimum of diligence to determine if the account[]holder [*i.e.*, Dordi] was making the request." Def. MSJ Br. at 9.  Defendant notes that Plaintiff was in possession of Dordi's actual email address and phone number and could have used that information to ascertain from Dordi whether his account was, in fact, being hacked, and whether Dordi had solicited Defendant's assistance to regain control of his Instagram account.  *Id.* at 11–12.

complain that he was induced to enter into the transaction by misrepresentations." *Mallis v. Bankers Tr. Co.*, 615 F.2d 68, 80–81 (2d Cir. 1980) (quoting *Schumaker v. Mather,* 133 N.Y. 590, 596 (1892)).  In other words, a modicum of diligence is always expected of a plaintiff, and "[a] heightened degree of diligence is required where the victim of fraud had hints of its falsity." *Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 26–27 (2d Cir. 1997).  The heightened diligence rule applies where the "[c]ircumstances [are] so suspicious as to suggest to a reasonably prudent plaintiff that the defendants' representations may be false." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).  A plaintiff "cannot reasonably rely on those representations, but rather must 'make additional inquiry to determine their accuracy.'" *Id.* (quoting *Keywell Corp. v. Weinstein,* 33 F.3d 159, 164 (2d Cir. 1994)).

Judge Tarnofsky recommended that this Court conclude that material issues of fact exist "as to whether there were hints of falsity in Defendant's statements about Dordi's account being hacked;" she further recommended that this Court conclude that a reasonable factfinder could find that Plaintiff had no reason to suspect that a friend (*i.e.*, Defendant) would lie to him about a hacked Instagram account.  R&R at 15.  The Court agrees.

The reasonableness of Plaintiff's reliance is, critically, "contextual."  *See Winnick*, 350 F. Supp. 2d at 406; *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 429 (S.D.N.Y. 2023) ("The reasonability of a plaintiff's reliance depends on the entire context of the transaction[.]" (internal quotation marks omitted)).  In this case, context is determinative.[10]

---

[10]    The context of this case also demonstrates why Defendant's citation to *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020 (2d Cir. 1993), *see* Def. Obj. at 7–8, a securities fraud case involving a dispute between sophisticated parties in a materially different circumstance than the parties to the present action, is not particularly helpful.  The Court also disagrees that application of the *Brown* factors favors Defendant and "defeat[s] justifiable reliance as a matter of law."  Def. Obj. at 7–8.

Defendant initially contacted Plaintiff, with whom she had a prior relationship, as a friend.  *See* Bhagat Dep. Tr., Dkt. 572-1 at 60:22–66:5.  She politely asked Plaintiff to help another friend, Dordi, regain control of his Instagram account.  Rule 56.1 Statement ¶¶ 5–8; Rule 56.1 Counterstatement ¶¶ 5–8, 47; *see also* LinkedIn Messages.  After Plaintiff indicated that he was "[n]ot sure how [he] could help," Defendant, a former Meta employee herself, walked Plaintiff through the steps necessary to reclaim Dordi's account.  *See* LinkedIn Messages.  Defendant provided Dordi's personal contact information (both real and fake), lending credence to her representation that Dordi was, in fact, (i) known to Defendant, and (ii) seeking her help.  *See id.* Defendant's LinkedIn messages to Plaintiff express a sense of urgency.  *See id.*  Several times, she told Plaintiff that Dordi had sensitive, financial information on his account that was at risk of being compromised.  *See id.*  According to Plaintiff, Defendant also told him that Dordi's account was posting "inappropriate content."  Rule 56.1 Counterstatement ¶ 47.  Between March 23 and April 23, 2023, Defendant reached out to Plaintiff on no less than *seven* occasions to prompt Plaintiff to act.  *See* LinkedIn Messages.  When not pestering Plaintiff for updates on his progress, Defendant and Plaintiff exchanged casual messages in the manner one would expect of chummy acquaintances—Defendant wished Plaintiff well, asked him about his role at Meta, provided job recommendations and career advice, and encouraged him to connect with her in person if he was ever in New York City.  *See id.*

To be sure, reasonable minds could disagree about whether Plaintiff should have exercised more caution in his dealings with Defendant.  After all, he picked up on numerous peculiarities throughout the process—Defendant's provision of conflicting email addresses, typos in phone numbers, and Meta's initial report to Plaintiff that it did not appear Dordi's account had been hacked.  When confronted with these issues, Plaintiff, to his credit, sought

verification from Defendant.  She had concocted a plausible explanation for each discrepancy, going so far as to tell Plaintiff that Dordi was "with [her] right now" and personally confirming the accuracy of her assertions.  *See* LinkedIn Messages.[11]  The Court cannot conclude, as a matter of law, that it was unreasonable for Plaintiff to rely, as he did, on the repeated representations and confirmations of a person he then considered to be a friend.[12]

In any event, the caselaw does not support Defendant's "interpretation that a [heightened] duty to inquire is necessarily triggered as soon as a plaintiff has the slightest 'hints' of any 'possibility' of falsehood."  *Winnick*, 350 F. Supp. 2d at 408.  Courts in this District have generally found that an elevated level of diligence is triggered where "the notice to the plaintiff was clear and direct," such as either being "provided by plaintiff's own direct knowledge of the fraud, by the terms of an operative contract, or by circumstances surrounding the parties' relationship (*e.g.* litigation) that would normally arouse suspicion."  *Id.*  None of those situations is present here.  Courts are not keen to hold unsophisticated[13] plaintiffs to a higher standard even if, for example, the plaintiff "ha[s] access to critical information" but fails to investigate further because he lacks a compelling reason "to question" the truth of the false information.  *See N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 998 F. Supp. 2d 301, 321 (S.D.N.Y. 2014).

Moreover, as the Court has explained, Plaintiff took *some* (albeit cursory) action to confirm the veracity of the information Defendant provided.  This case is, therefore, distinguishable "from those cases in which the plaintiff utterly failed to examine the defendants'

---

[11]    According to Dordi, this was a lie; he is "a hundred percent sure" he was not with Defendant on April 18, 2023, when she sent the message to Plaintiff.  Dordi Dep. Tr. at 25:14–26:24.

[12]    Comically, Defendant argues that Plaintiff should have ignored her altogether and asked to speak to Dordi personally.  Def. Obj. at 13.  In hindsight, given Defendant's demonstrated lack of trustworthiness, requesting to speak with Dordi probably would have been the most prudent course of action.  But Plaintiff's "recovery is not barred merely because he [] was negligent."  *See* R&R at 14 (collecting cases).

[13]    *See infra* n.14.

representation or to perform [any] due diligence . . . in the first place." *Winnick*, 350 F. Supp. 2d at 409 (collecting cases); *see also id.* at 413 ("Court cannot say as a matter of law that the [plaintiff's] reliance was unreasonable (or unjustified) because a [plaintiff] could have protected itself by making reasonable inquiries.").[14]

In sum, based on the evidence here presented, there are genuine issues of material facts as to whether sufficient hints of falsity existed to trigger a heightened level of diligence, whether Plaintiff's inquiries were sufficient, and, thus, whether Plaintiff's reliance on Defendant's misrepresentations was reasonable under these circumstances.  The Court agrees with Judge Tarnofsky that questions about what Plaintiff should have done when faced with Defendant's conflicting representations "is one about which reasonable people could easily differ." *Winnick*, 350 F. Supp. 2d at 413.  The defensibility of Plaintiff's reliance on such representations is, therefore, a question that belongs with the jury.  *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 496 (S.D.N.Y. 2012) ("[B]ecause justifiable reliance involves many factors to consider and balance, no single one of which is dispositive, it is often a question of fact for the jury rather than a question of law for the court." (cleaned up)).

---

[14]    Defendant makes much ado about the fact that "Plaintiff is a sophisticated software engineer at Meta." Def. Obj. at 14; *see also id.* at 7–8.  It is true that the sophistication of the parties is one non-dipositive factor used to assess the reasonability of a plaintiff's reliance.  *See, e.g.*, *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (reasonableness depends on "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them").  It is not clear to the Court, however, that Plaintiff's professional pedigree is relevant here.  His reliance on Defendant's representations was predicated on his friendship with Defendant, not any professional training that would have alerted him to the impropriety of Defendant's requests or to her overall lack of candor.  Indeed, Plaintiff was not even aware that the Oops Feedback Form existed until Defendant brought it to his attention.  *See* LinkedIn Messages; Rule 56.1 Counterstatement ¶ 48.  Moreover, the "transaction" here—*i.e.*, facilitating the submission of the Oops Feedback Form based on a friend's representations and on behalf of a third party—is not particularly sophisticated, nor does it implicate Plaintiff's job skills in any way.  In short, the Court does not see how Plaintiff's job as a software engineer should have particularly equipped him to deal with Defendant's deluge of falsehoods.

### ii.    Causation

To succeed on his fraud claim, Plaintiff must also be able to prove that Defendant's misrepresentations caused the damages that he alleges.  "To establish causation [in a common law fraud claim], [P]laintiff must show both that [D]efendant's misrepresentations induced [P]laintiff to engage in the transaction in question" (*i.e.*, "transaction causation," or but-for causation), "and that the misrepresentations directly caused the loss about which [P]laintiff complains," (*i.e.*, "loss causation," which is akin to proximate causation).  *Aquino by Convergent Distrib. of Tex., LLC v. Alexander Cap., LP*, 642 B.R. 106, 130 (S.D.N.Y. 2022); *see also, e.g.*, *Charney v. Wilkov*, 734 F. App'x 6, 9–10 (2d Cir. 2018); *Kwon v. Yun*, 606 F. Supp. 2d 344, 359–60 (S.D.N.Y. 2009).  A misstatement is a proximate cause of an injury if the "injury 'is the natural and probable consequence of the [ ] misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'" *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 916 F. Supp. 2d 442, 447 (S.D.N.Y. 2013) (quoting *Suez Equity Inv'r, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 104–05 (2d Cir. 2001)).  "Many considerations enter into the proximate cause inquiry including the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007) (internal quotation marks omitted).

Defendant's objections mainly rehash the arguments from her original summary judgment briefing that Judge Tarnofsky found unpersuasive.  She primarily contends that the R&R "fails to acknowledge that Plaintiff was fired for the simple fact" that he lied to Meta about his relationship with Dordi, not as a result of Defendant's misrepresentations.  Def. Obj. at 8–13.  "The only conduct triggering" Plaintiff's termination, she argues, "is Plaintiff's independent [] misrepresentation [to Meta], which was a voluntary act made three months after the" Oops

Feedback Form was submitted, "without any involvement by Defendant." *Id.* at 1.  According to Defendant, "[t]hat intervening act severs proximate cause as a matter of law." *Id.*   Defendant also spills much ink complaining about her inability to authenticate the Oops Feedback Form, as well as both parties' failures to obtain Plaintiff's Meta employment records.  *Id.* at 11–12.

Defendant does not seriously object to the R&R's finding that her misrepresentations were a but-for cause of Plaintiff's termination, and the Court sees no error in Judge Tarnofsky's finding that a reasonable jury could conclude, based on the evidence in the record, that Plaintiff would not have submitted the Oops Feedback Form absent Defendant's prompting.  *See* R&R at 18–19 (collecting evidence).

Defendant's argument that Plaintiff's own actions—*i.e.*, his unprompted decision to lie to Meta about his relationship with Dordi during Meta's investigation—broke the proximate cause chain is, analytically speaking, more compelling.  Still, there are glaring issues with Defendant's position that preclude summary judgment in her favor.  First, there is nothing in the record to support unequivocally the notion that Plaintiff was terminated from Meta *solely* because of "[his] own misrepresentations during the investigation." Def. Obj. at 13; *see also id.* at 8–9, 12.  It is plausible that Plaintiff's disingenuous responses to Meta investigators contributed to his termination.  It is at least equally as plausible, however, that Plaintiff was terminated, in part, for filing the Oops Feedback Form *ab initio*, based on Defendant's misrepresentations, and in violation of Meta's internal policies.  *See* R&R at 20–21.  Indeed, "there may be more than one proximate cause of an injury," and "[t]he mere fact that other persons share some responsibility for [P]laintiff's harm does not [inevitably] absolve [D]efendant from liability." *Demetro v. Dormitory Auth. of N.Y. State*, 96 N.Y.S.3d 30, 33 (1st Dep't 2019) (quoting *Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016)).  Defendant's contention that the Court should view "the absence of

any employment records establishing" the precise basis of Plaintiff's termination as evidence that supports *her* position, *see* Def. Obj. at 12–13, misconstrues the summary judgment standard; the Court is obligated to view all evidence in the light most favorable to the non-moving party—here, Plaintiff.

Second, the Court disagrees that Plaintiff's "intervening" misrepresentation to Meta was completely "unforeseeable to Defendant." Def. Obj. at 9. As Judge Tarnofsky notes, "[i]t is only where the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from defendant's conduct, that it may possibly break the causal nexus." R&R at 20 (quoting *Scurry v. N.Y.C. Housing Auth.*, 190 N.Y.S.3d 677, 684 (2023)). Plaintiff has marshaled enough evidence about Defendant's own history of misusing the Oops Feedback Form (and her prior discipline for attempting to recover accounts that did not belong to her) for a reasonable jury to conclude that Meta's reaction, and Plaintiff's attempt to cover his hide, was a reasonably foreseeable result of the course of events Defendant set in motion. *See* Dkts. 582-1, 582-2, 582-3. Said differently, given the evidence suggesting that Defendant was aware of the severity with which Meta dealt with abuse of the Oops Feedback Form by its employees, a reasonable factfinder could conclude that Plaintiff's later statements to Meta (in a *post hoc* attempt to save his job) were not so "extraordinary" as to break the proximate causal chain—notwithstanding that Plaintiff's representations to his employer were made "over three months after this initial submission [of the Oops Feedback Form] and following a period of zero contact with Defendant." Def. Obj. at 9.

For the avoidance of doubt, the Court agrees with Judge Tarnofsky that the other "intervening" events identified by Defendant—*i.e.*, Plaintiff's decision to file the Oops Feedback Form; Dordi's decision to lodge a complaint with Meta; and Meta's ultimate decision to

terminate Plaintiff—were clearly "related to Defendant's misrepresentation[s] to Plaintiff" and should have been foreseeable to Defendant.  *See* R&R at 20–21.  Indeed, Plaintiff filed the Oops Feedback Form only after Defendant's repeated requests that he do so.  *See* LinkedIn Messages. Even Dordi's decision to lodge a formal complaint with Meta came after Defendant herself prompted Dordi to investigate whether his account had been hacked (potentially by her).  *See* Rule 56.1 Statement ¶¶ 13, 22; Rule 56.1 Counterstatement ¶ 13; *see also supra* n.6.  All things considered, "[a] reasonable jury could conclude that Defendant's prior role as a Meta employee makes it highly probable that she could have foreseen that Plaintiff would be terminated" if he acted in accordance with Defendant's misrepresentations.  R&R at 19–20.

* * * *

In sum, the Court finds that a reasonable factfinder could conclude that Plaintiff was justified in relying on Plaintiff's misrepresentations and that Plaintiff's termination from Meta was a foreseeable result of Defendant's fraud.  Accordingly, Defendant's objections to the R&R's recommendation that Defendant's motion for summary judgment as to Plaintiff's fraud claim are OVERRULED, and the Court ADOPTS Judge Tarnofsky's recommendation. Defendant's motion for summary judgment on Plaintiff's fraud claim is DENIED.

**B.  Tortious Interference with Employment Relationship**

Under New York law, the elements of tortious interference with an employment relationship are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  Defendant's objections to the R&R focus exclusively on the fourth element (*i.e.*, causation), *see* Def. Obj. at 8–13; Defendant

16

does not object to Judge Tarnofsky's conclusion that her misrepresentations can, as a matter of

law, constitute wrongful means for purposes of a tortious interference claim, *see* R&R at 23–24.

Careful review of the R&R reveals no clear error as to that unobjected-to portion. *See Heredia v.*

*Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) (reviewing R&R for clear error where no party

objects).

As for the causation element, Defendant's objections are OVERRULED for the reasons

previously discussed. *See supra* at 12–16. A reasonable factfinder could conclude that

Defendant's misrepresentations to Plaintiff about Dordi's account were the but-for and

proximate cause of Plaintiff's termination from Meta. The Court thus ADOPTS Judge

Tarnofsky's recommendation; Defendant's motion for summary judgment on Plaintiff's tortious

interference claim is DENIED.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS the R&R in its entirety. Defendant's

motion for summary judgment, Dkt. 571, is DENIED. The Clerk of Court is respectfully

directed to terminate the open motion at Dkt. 571.

Not later than **Tuesday, June 30, 2026**, the parties must meet and confer and submit a

joint letter, via ECF, providing **three mutually acceptable** trial dates between **September 21,**

**2026**, and **December 18, 2026**. If the parties cannot agree on three dates, each party must

propose three dates. **As to any proposed date that a party disagrees with, the party who**

**disagrees must state specifically why that date (or those dates) is not acceptable.**

**SO ORDERED.**

**Date:  June 9, 2026**                                                    **VALERIE CAPRONI**
**New York, New York**                                          **United States District Judge**